Marshall National Bank v. Hardy-O'Neal, Receiver, et al.

No. 1498.

**1. Corporation—Accommodation Indorsement of Negotiable Paper.**

Sec. 6, art. 12, of the Constitution, providing that "no corporation shall issue stock or bonds except for money paid, labor done or property actually received," and art. 589 of the Revised Statutes, providing that "no corporation * * * shall employ its stock, means, assets or other property, directly or indirectly, for any other purpose whatever than to accomplish the legitimate objects of its creation," do not render void the accommodation indorsement by a lumber manufacturing corporation of negotiable paper, in the hands of a holder who acquired it for value, before maturity and without notice.

**2. Same—Notice.**

Where negotiable paper was drawn payable to the order of the drawer, and by it indorsed specially to the defendant corporation, and by defendant indorsed in blank, and cashed by the bank for another, whose indorsement was written above that of defendant, the position of the indorsements was not notice to plaintiff that defendant was an accommodation indorser.

Appeal from Marion. Tried below before Hon. John L. Shepperd.

*T. P. Young*, for appellant.—1. A purchaser of negotiable paper, who takes the same in good faith, for a valuable consideration, in ordinary course of business, when it is not overdue, and without notice, is unaffected by any defense which may have existed as between the original parties. Banking Company v. Turnley, 61 Texas, 369.

2. In order to render a negotiable security void by reason of its consideration being illegal, in the hands of an innocent holder for value, without notice, and before due, the statute which makes such contract illegal and void must also make same a crime, or the act itself must be immoral and contra bonos mores. Rhodes v. Beall, 73 Ga., 641; 2 Am. & Eng. Encly. Law, 368, note 4.

3. When a corporation has power under any circumstances to issue negotiable paper, a bona fide holder may assume that it was issued under the proper circumstances, and such paper cannot, more than any other commercial paper, be impeached for infirmity. 4 Am. & Eng. Encly. Law, 226, note 1; National Bank v. Young, 7 Atl. Rep., 488; Credit Company v. Howe Machine Company, 1 Am. St. Rep., 132, and note; s. c. 54 Conn., 357.

*E. A. Allday*, for appellees.—1. Whenever the constitution or statutes declare bills and notes void, they are and must be void in the hands of every holder. Gilden v. Hearn, 79 Texas, 120; Andrews v. Hoxie, 5 Texas, 171; Tied. Com. Paper, 178, 280; Abbott's Trial Ev., 440; 1 Daniel Neg. Inst., 807; 2 Randolph Com. Paper, 517; 2 Am. & Eng. Encycl. Law, 368; 27 Am. & Eng. Encycl. Law, 378, 379; Lawson on Contracts, 349; 4 Lawson's Rights, Rem. and Prac., 2780, par. 1600; German Bank v. Deshon, 41 Ark., 337.

2. If a maker or prior indorser of a note procures it to be discounted for his own benefit, it is, if unexplained, notice to the discounter that

the indorsement is not in the usual course of business, but is for the accommodation of the maker or prior indorser. National Park Bank v. Security Co., 116, N. Y., 285 (22 N. E. Rep., 567); Wallace v. Branch Bank, 1 Ala., 565; Malden v. Bank, 2 Ala., 513; Hendric v. Berwitz, 37 Cal., 173; Whitworth v. Adams, 5 Rand., 411; Overton v. Hardin, 6 Cold., 376; Stall v. Bank, 18 Wend., 478; Cheves v. Railway, 25 N. Y. Sup. (72 Hun.), 380; Fieldures v. Lohens, 2 Abb. (N. Y.) App., 111; Adrian v. McCaskill, 103 N. C., 181; 1 Daniel Neg. Inst., 713; Tiedeman Com. Paper, 270.

FINLEY, ASSOCIATE JUSTICE.—In June, 1893, the District Court of Marion County appointed H. A. O'Neal receiver of the Sulphur Lumber Company. This appointment was made in the case of H. Munzesheimer v. Sulphur Lumber Co., pending in said court. The validity and regularity of the appointment are not questioned in this appeal, and no question as to the time, manner or propriety of the appointment is made.

June 21, 1893, the court below made an order appointing Hon. Jno. B. Eddins master in chancery in said suit, and all the creditors of the company, who might desire to intervene, were required to file and docket their pleas of intervention. All pleas of intervention were required to be filed with said Jno. B. Eddins for his adjudication, and his adjudication was to become the judgment of the court unless excepted to before said master within fifteen days. No question in this case arises as to the method of procedure under, or the validity of, said order.

September 28, 1893, the intervenor, the Marshall National Bank, filed its intervention in said cause, claiming that the company owed it $9917.43, besides interest. This debt was evidenced by seven notes of the company each for $500, one for $764, one for $1138.75, and four for $1000 each. The notes for $1000 and $1138.75 stipulated for 10 per cent attorney's fees. The sum total, including fees, is the sum first given. No question as to form in which the cause of action was pleaded was made, and none arises in this case. The seven notes for $500 each, and the one for $764.81, were payable to J. H. Bemis, and by him endorsed to appellant; all of the others were payable to the cashier of appellant.

April 12, 1894, the company and its receiver filed their answer, which contained the general demurrer and general denial, as to which no question arises, and are now dismissed from further consideration. The answer also contained the following plea: "For further answer the said defendant and receiver here show that the intervenor ought not to recover herein, because the said notes and each of them sued on are, and were ab initio, void and without legal consideration; that the same is and was accommodation paper, and executed without any authority of defendant, of all of which intervenor herein had legal, actual and constructive notice; wherefore intervenor ought not to recover, for which they pray."

April 13, 1894, the appellant filed its supplemental plea in reply to said answer, in which it is averred that the notes on which it sued were

executed in renewal of a note of the company for $1916.25, which it discounted May 15, 1891, and in renewal of four bills of exchange, described substantially. May 8, 1891, the intervenor discounted for cash, at 10 per cent discount, bill of exchange drawn by J. H. Bemis & Co. on Kensington Lumber Co. for $1927.16; also bill of exchange drawn by same party on W. H. Noll for $1511.09; also bill of exchange drawn by same drawers on Campbell, Fisher & Co., for $2116.49; and on June 2, 1891, bill of exchange drawn by same drawers on Whitney & Co. for $2209.47. All of these bills were drawn payable to the order of drawer, were endorsed by the drawer specially to the Sulphur Lumber Company, and by said company endorsed in bank. The last four bills were discounted for the Jefferson Lumber Company, and intervenor paid the money to said company.

The statement, a part of the supplemental plea, shows the history of the debt, the renewals through which it passed, and how it culminated in the notes on which the suit was filed. Said statement is as follows:

Statement of loans made to Sulphur Lumber Co. by Marshall National Bank:

April 15, '91.  Discounted note of Sulphur Lumber Co. for. . . .$1916.25
May 8, '91.  Discounted Bill of Exchange for Sul. L'b'r Co. for.  1511.09
May 8, '91.  Discounted Bill of Exchange for Sul. L'b'r Co. for.  2116.49
May 8, '91.  Discounted Bill of Exchange for Sul. L'b'r Co. for.  1927.76
June 2, '91.  Discounted Bill of Exchange for Sul. L'b'r Co. for.  2209.47

Total ............................$9681.06

Tracing the original loans, as follows:

"No. 1.  Aug. 14, '91.  The note for $1916.25 was renewed and the interest paid to the time of extension.

"No. 2.  January 2, '92.  We received 15 notes, 14 for $500 each and one for $764.81 of Sulphur Lumber Co. in place of the four bills of exchange above, the total aggregating $7764.81.

"No. 3.  Sept. 8, '92.  The note No. 1 for $1916.25, together with three notes of No. 2 for $500 each, were merged into three notes of $1138.25 each, due Oct., Nov. and Dec. 1, '92, and all interest paid to that time.

"No. 4.  Dec. 3, '92.  One of the $1138.25 notes was renewed for 60 days, and the interest paid to the time of renewal.

"No. 5.  January 5, '93.  The other two notes of $1138.25 each were renewed for 60 and 90 days respectively, and the interest paid.

"No. 6.  January 5, '93.  Four of the No. 2 notes for $500 each were merged into two notes of $1000 each, to run 60 and 90 days, and the interest paid up to that time.

"No. 7.  Feb. 6, '93.  One of the $1138.25 notes of No. 5 was renewed for 60 days, and the interest paid up to that time.

"No. 8.  Mch. 13, '93.  One of the $1000 notes and one of the $1138.25 notes were renewed for 60 and 90 days, and the interest paid to then.

"No. 9. May 2, '93. Two of the $1138.25 notes and one of the $1000 of No. 7, were merged into three notes of $1000 each, for 60 and 90 days and four months, and the difference of $277.50 was paid in cash, as was also the interest on the whole.

"No. 10. June 7, '93. Interest on all of the notes that were due was paid to June 10, 1893.

### Recapitulation.

| | |
|---|---:|
| 7 notes of $500.00 now due ........................... | $3500.00 |
| 1 note of $764.81 now due ........................... | 764.81 |
| 4 notes of $1000.00 now due ........................... | 4000.00 |
| 1 note of $1138.85 now due ........................... | 1138.75 |
| Total now due........................... | $9403.56 |

The originals of the four bills of exchange have been sent up by the trial court with the transcript to this court.

The case was submitted to the master in chancery June 8, 1895; he reported same day against the claims in toto, and that they not be allowed.

June 7, 1895, exceptions were filed by appellant to the judgment of the master, before him, and the exceptions, with his report, were filed in court June 8, 1895. June 21, 1895, the case was tried before the judge of the District Court, and he set aside the report of the master, in so far as he disallowed the claims to the extent of the amount due on the note for $1916.25, and gave appellant judgment for $2444.13, amount due on said note, including interest and attorney's fees; and he rejected the claims as to the remainder of the debt, that is, all that part of the debt founded on the four bills of exchange.

*Conclusions of Fact.*—The evidence introduced upon the trial of the cause establishes the following facts:

1. The several instruments set out in the original plea of intervention were read in evidence and proved as alleged, namely: seven notes for $500 each, bearing date January 2, 1892, executed by the Sulphur Lumber Co., payable to the order of J. H. Bemis, and endorsed on the back by J. H. Bemis. The first of said notes was due and payable February 10, 1893, and one on the 10th day of each month thereafter; and also one note bearing same date, for $764.81, payable to the order of J. H. Bemis, executed by the Sulphur Lumber Co., payable September 10, 1893, and endorsed on the back thereof J. H. Bemis. Each and all of said notes were received by appellant bank before their maturity and value paid therefor in manner hereafter stated, and without any notice that they were not executed for value by the Sulphur Lumber Co. Also, one note dated March 8, 1893, for the sum of $1138.75 executed by the Sulphur Lumber Co., payable to the order of J. P. Alford, cashier of the Marshall National Bank, ninety days after date, with 10 per cent interest

from maturity, and 10 per cent attorney's fees if collected by law or placed for collection. Also, four notes for $1000 each, executed by said Sulphur Lumber Co., payable to the order of J. P. Alford, cashier as aforesaid, each bearing interest at 10 per cent from maturity, and providing for 10 per cent attorney's fees if collected by law. One of said notes, dated March 9, 1893, due sixty days after date, and each of the other notes bearing date April 8, 1893—one due sixty days after date, one ninety days after date, and the other four months after date.

2. Each and all of the above notes, executed by the Sulphur Lumber Company, were received by the bank in renewal of and their consideration based upon other obligations held by the bank, as follows: April 15, 1891, the intervenor discounted the note of the Sulphur Lumber Co. for $1916.25, the note was payable July 15, 1893, specified no rate of interest. The intervenor paid the money to the Jefferson Lumber Co. for the notes, and discounted same at 10 per cent. The Sulphur Lumber Co., the maker of said note, received value for it. Said note formed part consideration of the $1138.75 and four $1000 notes on which the intervention is founded, and said notes all stipulated 10 per cent attorney's fees in case of suit. The Sulphur Lumber Co. received the money from that note from the Jefferson Lumber Co. In June and May, 1891, the Jefferson Lumber Co. discounted at the bank of intervenor and received the money on the following bills of exchange: one dated April 3, 1891, for $2209.47, drawn by J. H. Bemis & Co., payable to order of drawer August 10, 1891; one dated March 24, 1891, for $1511.09, drawn by J. H. Bemis & Co., payable to order of drawer four months after date; one dated March 19, 1891, for $1927.76, drawn by J. H. Bemis & Co., payable to the order of drawer four months after date; one dated April 8, 1891, for $2116.49, drawn by J. H. Bemis & Co., payable to order of drawer four months after date.

Each of these bills of exchange was negotiated by the Jefferson Lumber Co. to the bank, and was at the time endorsed upon the back by J. H. Bemis & Co., Jefferson Lumber Co., J. H. Bemis and Sulphur Lumber Company. The bank bought and paid to the Jefferson Lumber Co. the cash money for said bills of exchange before they were mature, within business hours and in the regular course of business, without any actual notice of any infirmity in the same, or defense against them. The endorsements now appear upon the original bills in the order above named. The first endorsement was special to the Sulphur Lumber Co., viz: "Pay Sulphur Lumber Co."; the other endorsements were in blank. Inspecting the original bills sent up, we find the word "and" appearing between the words "pay Sulphur Lumber Co." and the signature of J. H. Bemis & Co. It is clear however that a special endorsement was intended and made by J. H. Bemis & Co. to Sulphur Lumber Co.—the word "and" was evidently not intended to show a partial transfer. While the endorsements of the Sulphur Lumber Co. now appear upon the original bills below all the other endorsements, the evidence shows that the same was second in point of time; the endorsements of the drawer alone were

upon the paper when the Sulphur Lumber Co. entered thereon its endorsements.

When the Sulphur Lumber Co. endorsed said bills, it charged them on its books to J. H. Bemis. At this time there was a long running account between J. H. Bemis and the company; sometimes the balance was against Bemis, and sometimes in his favor. There was also a long running account between the Jefferson Lumber Co. and the Sulphur Lumber Co., and at this time the Jefferson Lumber Co. owed the Sulphur Lumber Co. more than the amount of these bills.

It appears that Bemis was liable upon the Jefferson Lumber Co. indebtedness; not considering this liability, the books showed at this time that the Sulphur Lumber Co. was considerably indebted to Bemis. The Jefferson Lumber Co. failed before the maturity of the bills, and Bemis & Co. were also unable to pay. The bills were duly protested. Bemis never paid the Sulphur Lumber Co. the amount of his indebtedness, nor did the Jefferson Lumber Co. The Sulphur Lumber Co. acknowledged its liability by payment of interest upon the bills and note and part of the principal, and executing its separate obligations for the amount of the debt, securing thereby an extension of time. Its liability upon these obligations was never questioned until after the appointment of a receiver for the Sulphur Lumber Co. Exhibit "A" attached to the supplemental plea of intervention correctly states the facts as to the renewal of the said note and bills.

3. The Sulphur Lumber Co. was incorporated under the laws of Texas, and the objects of the corporation were stated in the charter to be "the manufacture of lumber and shingles, and the transaction of a general lumber business."

4. The Jefferson Lumber Co. is also a Texas corporation; J. H. Bemis was its president, and he was vice-president of the Sulphur Lumber Co.

*Conclusions of Law.*—Upon this state of facts, the court below based the following conclusions of law: "As a matter of law, I conclude that the note for $1916.25 of the Sulphur Lumber Company was a valid claim against the company for said amount, and interest on same at the rate of eight per cent per annum from the 10th of June, 1893, and ten per cent attorney's fees. I conclude that the four bills of exchange were endorsed by the Sulphur Lumber Company for accommodation of the Jefferson Lumber Company and J. H. Bemis & Co., and are therefore void under article 12, section 6 of the State Constitution, as against all persons, irrespective of notice; also, that said bills of exchange are ultra vires and void under article 589 of the Revised Civil Statutes. I also conclude that the intervenor had constructive notice of the accommodation character of the said four bills of exchange, and are not protected as bona fide holders of the same, for the reason that they were discounted by the Jefferson Lumber Co., to whom intervenor paid the money, and from the position of the endorsements on the back of said bills. I also

concude that the Jefferson Lumber Company was an original promisor of all of said bills."

Appellant's first assignment of error is as follows: "The court erred in finding, as a conclusion of law, that the four bills of exchange drawn by J. H. Bemis & Co., payable to the order of drawer, endorsed specially to the Sulphur Lumber Company, and by it endorsed in blank, and aggregating $7764.21, were void under section 6, art. 12 of the Constitution, and art. 589 of the Revised Civil Statutes, because the finding of facts shows that said drafts were negotiable paper under the law merchant; were acquired in good faith by intervenor in due course of business, without notice of any defense, and for an adequate and valuable consideration."

Waiving for the present the question of the correctness of the conclusion that the endorsements of the Sulphur Lumber Company were made for accommodation, were such endorsements void in the hands of an innocent holder for value, acquired before maturity? Section 6, art. 12 of the Constitution referred to, reads: "No corporation shall issue stock or bonds except for money paid, labor done, or property actually received, and all fictitious increase of stock or indebtedness shall be void."

Article 589 of the statutes, also referred to, is in these words: "No corporation created under the provisions of this title shall employ its stock, means, assets or other property, directly or indirectly, for any other purpose whatever than to accomplish the legitimate objects of its creation."

Clearly, neither the provision of the Constitution, nor the statute, prohibits a corporation from endorsing negotiable paper in the course of its legitimate business. Is the right to so endorse commercial paper implied form its general powers? The law does not undertake to prescribe the methods by which such corporations shall carry on their business, and they have the implied right to adopt and use such methods in the transaction of their business as individuals make use of in such a business. The endorsement of negotiable paper in a business of manufacture and sale, appears not only to be usual, but almost indispensable.

The law of its creation gives to this corporation power "to enter into any obligation or contract essential to the transaction of its authorized business." Sayles' Civ. Stats., art. 575, sec. 7. We think it clear that the Sulphur Lumber Co. had the power to endorse commercial paper in the transaction of its legitimate business. Bank v. Young, 7 Atl. Rep., 488. It is equally clear that it did not have the right to lend its name, and thereby incur liability for the mere accommodation of another. When such a corporation exceeds its authority by endorsing negotiable commercial paper for accommodation, such paper in the hands of an innocent holder, acquired before maturity, for value, without notice of the accommodation endorsement, is binding upon such corporation. 1 Dan. Neg. Inst. (4 ed.), sec. 386; 1 Am. St. Rep., 136, note. It is unnecessary for us to determine what would be the rights of an innocent holder of bonds or stock issued in violation of the Constitution and statute.

We think it enough for us to say here, that the provisions quoted do not render such corporation endorsements of negotiable paper made for accommodation, void in the hands of an innocent holder, acquired for value before maturity, without notice. Cook on Stocks, etc., sec. 25; Stoney v. Ins. Co., 11 Paige, 635; Rhodes v. Beall, 73 Ga., 641.

The court below also held that the bank had constructive notice by reason of the position of the endorsements upon the bills. This conclusion we think erroneous. The bills were drawn by J. H. Bemis & Co., payable to their order, and were by them endorsed specially to the Sulphur Lumber Co.; this made the Sulphur Lumber Co. the payee in the bills, and they could not pass by negotiation without the endorsement of said payee. Dan. on Neg. Inst., sec. 128. Its endorsement, therefore, appeared from the bills themselves to have been made prior to that of the Jefferson Lumber Company, and the evidence showed this to be the fact. It is not shown by the evidence when the Jefferson Lumber Company endorsed the bills, and it is reasonable to assume that it did so at the time of their negotiation to the bank. The fact that its name now appears on the bills above that of the Sulphur Lumber Company does not conclusively fix its relation as endorser. Even if the endorsements did appear at the time of the negotiation of the bills, as contended for, showing the Jefferson Lumber Company to be an intermediate endorser, this fact would not visit notice upon the bank of the accommodation character of the endorsements of the Sulphur Lumber Company. Richards v. Monroe, 39 Am. St. Rep., 305, note 1; Dan. Neg. Inst. (4 ed.), secs. 774, 775.

It is not clear to us that the court was correct in concluding that the endorsements of the Sulphur Lumber Company were made for accommodation. Aside from this question, however, we think the bank was entitled to have judgment for its entire debt. It was an innocent purchaser for value of the bills before their maturity, without notice that the Sulphur Lumber Company was other than an endorser for value, and it had the right to assume that the Sulphur Lumber Company had made the endorsements upon consideration in the usual course of its business.

The judgment of the court below is reversed, and here rendered for appellant for the full amount of its debt, interest and attorney's fees.

*Reversed and rendered.*

Delivered November 16, 1895.

### ON MOTION FOR REHEARING.

FINLEY, ASSOCIATE JUSTICE.—Upon re-examination of the record, we find that our conclusions of fact filed heretofore contain some inaccuracies of statement in relation to the seven $500 notes declared upon, and we have reformed the conclusions in those particulars. This change, however, does not affect our conclusion as to the proper disposition of the

case. We have given careful consideration to the merits of the case, and see no reason to change our former holding. The motion for rehearing is overruled.

*Overruled.*

Delivered December 21, 1895.

Writ of error refused.